UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| ANTHONY C. MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-69-SLC |
| | ) | |
| STATE OF INDIANA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This action arises out of an incident in which Plaintiff Anthony Martin ("Martin") alleges that Fort Wayne Police Department officers stopped his vehicle without probable cause, used excessive force against him, and unlawfully entered and searched his home. Before the Court is a motion for summary judgment filed by the remaining Defendants in this case, Officer Addison, the City of Fort Wayne, and the Fort Wayne Police Department (collectively, "Defendants"). (DE 65). This motion has been extensively briefed by the parties. (DE 66, 69, 74, 76, 79, 80). Also before the Court is Defendants' motion to strike portions of Martin's affidavit in support of his response in opposition to Defendants' motion for summary judgment (DE 72). This motion has also been fully briefed. (DE 73, 77, 78).

These motions are now ripe for adjudication. Before addressing Defendants' motion for summary judgment (DE 65), the Court must first determine what evidence it may evaluate by addressing Defendants' motion to strike (DE 72) statements in Martin's supporting affidavit to his response in opposition to Defendants' motion for summary judgment.

## I. MOTION TO STRIKE

Defendants' motion to strike portions of Martin's affidavit (DE 72) will be GRANTED

IN PART and DENIED IN PART for the reasons addressed herein.

### A. Legal Standard

Federal Rule of Civil Procedure 56 states that affidavits filed in support of summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "An affidavit not in compliance with Rule 56 can neither lend support to, nor defeat, a summary judgment motion." *Paniaguas v. Aldon Cos.*, No. 2:04-CV-468-PRC, 2006 WL 2568210, at *4 (N.D. Ind. Sept. 5, 2006) (citing *Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145, 1148-49 (7th Cir. 1989); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989)).

"[W]hen considering a motion to strike portions of an affidavit in support of a motion for summary judgment, courts will only strike and disregard the improper portions of the affidavit and allow all appropriate recitations of fact to stand." *Id.*; *see also Stromsen v. Aluma Shield Indus., Inc.*, No. 89 C 5036, 1993 WL 34727, at *4 (N.D. Ill. Feb. 8, 1993); *Toro Co. v. Krouse, Kern & Co.*, 644 F. Supp. 986, 989 (N.D. Ind. 1986); 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2738 (3d ed.). Specifically, the following statements are not properly included in an affidavit and should be disregarded: (1) conclusory allegations lacking supporting evidence, *see Young v. Monahan*, 420 F. App'x 578, 583 (7th Cir. 2011); (2) legal argument, *see Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985); (3) inferences or opinions not "grounded in observation or other first-hand experience," *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991); (4) mere speculation or conjecture, *see Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999); and (5) statements in affidavits which blatantly contradict

prior sworn testimony in an attempt to create sham issues of genuine dispute, *see Beckel v. Wal-Mart Assocs., Inc.*, 301 F.3d 621, 624 (7th Cir. 2002); *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996).

### *B. Discussion*

Defendants seek to strike paragraphs 3, 4, and 6 of Martin's affidavit (DE 69-1). In their memorandum in support of their motion to strike, Defendants contend that "paragraphs 3, 4, and 6 of Anthony C. Martin's affidavit should be stricken because they contradict Martin's prior sworn deposition testimony, are self-serving, are speculative, and are irrelevant." (DE 73 at 1). Defendants argue that these paragraphs of Martin's affidavit contain direct contradictions with his prior sworn deposition testimony regarding the location and duration of the alleged stop on December 15, 2010, the number of officers involved, the specific officers involved, and how Martin learned that police officers had gone to his home that day.

In response, Martin argues that the Court should deny Defendants' motion to strike because the statements in his affidavit that Defendants allege are contradictory are in fact non-contradictory, explainable, necessary, and permissible even where considered self-serving. (DE 77 at 2). Martin contends that he approximated the number of officers and the distance from his house slightly differently on two separate occasions in his deposition and his affidavit. Martin argues that any discrepancies between the statements in his affidavit and his prior deposition testimony are "minor" and "explainable," so the affidavit testimony in paragraph 3 should not be precluded. (DE 77 at 2-3). Martin further argues that just because he stated in his deposition that he did not know the officers before the incident does not mean he cannot identify Officer Addison as having been involved after the incident, as he does in his deposition. Martin

therefore argues that this statement in paragraph 4 is not contradictory and should not be stricken. Martin argues that the mere fact a statement in an affidavit is self-serving does not preclude the Court from considering it on summary judgment. Finally, Martin contends that his statements in paragraph 6 about not having granted consent to the officers' entry into his residence is "on its face relevant" to his unlawful entry claim. Martin thus requests that the Court deny Defendants' motion to strike, or in the alternative, that the Court deny in part the motion regarding the admissible portions of paragraphs 3, 4, and 6.

In their reply brief, Defendants argue that Martin's answers during his deposition testimony were "unequivocal" and "unambiguous" regarding the number of officers involved, the location of the incident, and whether he knew any of the officers; Defendants contend that "[i]t is hard to believe that Martin remembered the alleged incident in specific detail nearly four years later when his deposition was taken, but had to rely on estimates of the number of officers and the location of the alleged traffic stop only seven months after his deposition was taken." (DE 78 at 1). Defendants argue that "even if Martin did identify Officer Addison after or during the incident, as plaintiff's counsel suggests, Martin had ample opportunity to testify that Officer Addison was present during the alleged traffic stop. Martin's later testimony [by affidavit] that he believed Officer Addison was one of the officers present at the alleged traffic stop is clearly contradictory to his prior deposition testimony." (DE 78 at 2). While Defendants appear to agree that the mere fact a statement in an affidavit is self-serving does not mean the Court is precluded from considering it on summary judgment, Defendants clarify that "[s]elf-serving statements in an affidavit *without factual support in the record* should not be considered at the summary judgment stage." (DE 78 at 2-3 (citations omitted)). Defendants argue that whether or not they

4

agree that Martin did not consent to entry or search of his residence does not matter, as his statement that he did not give consent is still irrelevant because he was not at the house to give consent, so the statement is not of consequence in the determination of any of the issues on summary judgment and should therefore be stricken.

The Court will first address Defendants' arguments that Martin's affidavit statements were clearly contradictory to his deposition testimony; the Court will then turn to Defendants' arguments that Martin's statements in his affidavit were self-serving and irrelevant.

### 1. Martin's Affidavit Statements Are Not Sufficiently Contradictory to Warrant Being Stricken

Under Federal Rule of Civil Procedure 56, summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Williams v. Excel Foundry & Mach., Inc.*, 489 F.3d 309, 310 (7th Cir. 2007). Additionally, the Seventh Circuit has held that district courts have great discretion in deciding whether to allow a party to change damaging deposition testimony with a supplemental summary judgment affidavit. *Stinnett v. Iron Works Gym/Exec. Health Spa, Inc.*, 301 F.3d 610, 614 (7th Cir. 2002).

However, under the so-called "sham affidavit" rule, most courts will disregard affidavits which blatantly contradict prior sworn testimony. *Beckel*, 301 F.3d at 624. "Affidavits, though signed under oath by the affiant, are typically . . . written by the affiant's lawyer, and when offered to contradict the affiant's deposition are so lacking in credibility as to be entitled to zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the

discrepancy." *Id.* (citations omitted).

If parties were permitted to create sham issues of fact with affidavits contradicting their prior depositions, "the very purpose of the summary judgment motion—to weed out unfounded claims, specious denials, and sham defenses—would be severely undercut." *Bank of Ill.*, 75 F.3d at 1168-69 (citations omitted). "This principal must be applied with great care," however, "because summary judgment is not a tool for deciding questions of credibility." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015) (citing *Bank of Ill.*, 75 F.3d at 1169-70). It is common for lay witnesses to have "at least occasional lapses of memory or needs for correction or clarification," and if the Court were to disregard "as a sham every correction of a memory failure or variation in a witness's testimony," it would "usurp the trier of fact's role in determining which portion of the testimony was most accurate and reliable." *Id.* (citing *Tippens v. Celotex Corp.*, 805 F.2d 949, 953-54 (11th Cir. 1986)). The Seventh Circuit has therefore made it clear that "an affidavit can be excluded as a sham only where the witness has given 'clear answers to unambiguous questions which negate the existence of any genuine issue of material fact.'" *Id.* (quoting *Bank of Ill.*, 75 F.3d at 1170).

The issue here comes down to whether Martin's deposition and affidavit statements—regarding the location and duration of the alleged stop, the number of officers involved, whether Martin could identify any of the specific officers involved, and how Martin learned that police officers had gone to his home that day—are contradictory such that they should be excluded from the Court's consideration as to summary judgment. As discussed above, in order to find that Martin's statements should be excluded, the Court must find that his affidavit testimony contradicts with "clear answers to unambiguous questions" asked during his

deposition, where the deposition testimony "negate[s] the existence of any genuine issue of material fact." *Id.*

As to the location of the stop, Martin states in his affidavit that his "recollection" is that he was stopped "before he returned, only a couple doors down from [his] home." (DE 69-1 ¶ 3). In contrast, when asked at his deposition "what route [had he taken] to get to the spot where [he was] pulled over," Martin testified that he had "pulled out [of his] backyard and proceeded like - uh, Masterson is, the next street over is Barr. So once [he] came out the alley, it was like [he] went down no more than like two or three streets." (DE 71-2 at 4). Martin testified at his deposition that at the time he was stopped by the officers, he was traveling south on Barr Street, near Barr's intersection with Butler or Dewald. (DE 71-2 at 4). But Martin also testified during his deposition that the officers put him into a patrol car and took him to "the end of Masterson and Barr" where he could "see towards the house" off towards his left, and he was only "a couple houses" from his house. (DE 71-2 at 7).

This testimony appears to resolve the inconsistencies that Defendants allege exist between Martin's statements in his affidavit and his testimony at his deposition. Thus, the Court does not conclude that Martin's affidavit testimony regarding location should be excluded as contradictory or a sham. Furthermore, even if the Court were to exclude this portion of Martin's affidavit regarding the location of the stop, it would not eliminate the genuine dispute of material fact between Martin's version of events and Defendants' version of events. Were the Court to exclude Martin's statements in his affidavit regarding the location of the stop, Martin's deposition testimony would still stand. Thus Martin's testimony about location during his deposition—that the stop occurred on Barr Street near where it intersects with Butler and

Dewald, and that the officers later took him in a patrol car to a location a couple houses down from his house—would still cause a genuine issue of material fact to exist, given Defendants' contention that Fort Wayne Police officers did not stop Martin at any location on the date in question.

As to the duration of the alleged stop, Martin states in his affidavit that he was handcuffed and not permitted to leave for "about an hour" before the officers removed the handcuffs and allowed him to leave. (DE 69-1 ¶ 3). During his deposition, Martin was asked "how long [was he] sitting in the police car then right by Masterson, by the house?" (DE 71-2 at 8). Martin responded that it was "around about twenty minutes." (DE 71-2 at 8). Martin then was asked "[h]ow long [he thought] the incident where they pulled [him] over lasted," and Martin answered that it was "[f]ifteen, twenty minutes." (DE 71-2 at 8-9).

The questions asked by defense counsel during Martin's deposition were ambiguous and open to interpretation, particularly given Martin's answers to the questions. The first question appears to focus on the time Martin spent specifically in the police car once it had moved him closer to his house, and the second question asks how long the incident in which he was pulled over lasted. Martin gave a shorter time in his answer to the second question, which creates an inference that his answer of 15-20 minutes was with regard to the length of the stop prior to him being moved closer to his house in the patrol car, where he sat for 20 minutes. Defense counsel did not ask how long his entire encounter with the police officers lasted. Martin's affidavit statement that he sat in the back of a patrol car, while handcuffed, for "about an hour" does appear to be inconsistent with his deposition testimony that he sat in the police car for "around about twenty minutes," but this inconsistent statement does not appear to be a "sham" statement

made to create a dispute of material fact.  Even if Martin's affidavit statement regarding the

duration he was in the patrol car was excluded by the Court, a genuine issue of material fact

would still exist, because Martin's deposition testimony regarding the length of the incident is

entirely different from Defendants' affidavits that they had no interaction with Martin on the date

in question.

Regarding the number of officers involved, Martin states in his affidavit that "[a]bout five

or six officers surrounded my car and ordered me out."  (DE 69-1 ¶ 3).  Martin, however, also

states in his affidavit a description of the officers he remembered, specifically that there was one

black male officer, a blond female officer, and "at least two white male officers."  (DE 69-1 ¶ 4).

In his deposition, Martin was asked how many officers approached his vehicle, and he answered

"four."

Defendants argue that "[i]t is hard to believe that Martin remembered the alleged incident

in specific detail nearly four years later when his deposition was taken," when he gave an

"unequivocal [answer] regarding the number of officers present"—"[f]our,"—"but had to rely [in

his affidavit] on estimates of the number of officers . . . only seven months after his deposition

was taken."  (DE 78 at 1).   However, Martin's statements in his affidavit as to the number of

officers involved are not sufficiently inconsistent with his prior deposition testimony to merit

striking these statements in the affidavit.  *See Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480

F.3d 478, 488 (7th Cir. 2007) (noting that changes in testimony are plausible in a "number of

scenarios" and stating that "a court must examine the particular circumstances of a change in

testimony to see whether it is plainly incredible or merely creates a credibility issue for the

jury"); *see also Dore v. Five Lakes Agency, Inc.*, No. 14 CV 6515, 2015 WL 4113203, at *3

(N.D. Ill. July 8, 2015) (citing *Castro*, 786 F.3d at 571); *Ruiz v. Serco, Inc.*, No. 10-cv-394-bbc, 2011 WL 7138732, at *4 (W.D. Wis. Aug. 5, 2011) (citing *Patton*, 480 F.3d at 488). Here, there is a slight inconsistency between Martin's affidavit and his prior deposition testimony, but his statements regarding the number of officers involved do not reach the level of "plainly incredible" required for exclusion. To the extent that Martin's affidavit is seen as deviating from what he said during his deposition, that is a credibility issue for a jury to decide. *See Patton*, 480 F.3d at 488.

As to whether Martin could identify any of the officers involved in the incident, he states in his affidavit that "[t]he officers [he] remember[s] seeing present during this incident included a black/ African-American male, at least two white male officers, and a blond female officer. [He] believe[s] Officer Addison was one of these officers." (DE 69-1 ¶ 4). Martin explains that "[o]f the two white male officers, one was tall, and the other was shorter and stocky. This was the officer that [Martin] remember[s] pulled [him] from the car, and [that officer] participated in the other force that was used on [Martin]." (DE 69-1 ¶ 4). Martin further states that "[t]he same officer also was present when [Martin] was held in the police squad car, in handcuffs, against his will." (DE 69-1 ¶ 4). In his deposition testimony, Martin was asked how many officers approached his vehicle, and he responded, "four." (DE 71-2 at 5-6). Martin was asked if they were all male officers, and he responded, "yeah." (DE 71-2 at 6). Martin was then asked if he knew any of these officers before the incident, and Martin replied, "not before this incident." (DE 71-2 at 6). When he was asked whether any of the officers looked familiar to him, he replied, "no." (DE 71-2 at 6).

Defendants argue that Martin stated "very clearly in his deposition that all of the officers

were male and that Martin did not know or recognize any of the officers that allegedly stopped his vehicle on December 15, 2010." (DE 73 at 5). Defendants argue that Martin's later "identification of Officer Addison in his affidavit is a clear attempt to create an issue of fact as to Officer Addison's presence at the scene of the alleged traffic stop." (DE 7 at 5). Defendants thus contend that Martin's identification of Officer Addison in his affidavit is a sham and should be stricken, because they argue that Martin is attempting to create a genuine issue of fact by submitting an affidavit that contradicts plain admissions during his prior sworn deposition testimony. In his response, Martin argues that his identification of Officer Addison in his affidavit is not contradictory with his deposition testimony that he did not know the officers "before the incident." (DE 77 at 3). Martin argues that his affidavit and deposition testimony are not mutually exclusive, and should therefore not be stricken. (DE 77 at 3). In their reply brief, Defendants contend that Martin had the opportunity to testify at his deposition to identify Officer Addison as one of the officers who participated in the alleged traffic stop, but he failed to do so. Defendants place emphasis on Martin's response that he could not recall anything else about the incident that he had not already mentioned, when he was asked during his deposition. (DE 78 at 2). Defendants therefore argue that "Martin's later testimony that he believed Officer Addison was one of the officers present at the alleged traffic stop is clearly contradictory to his prior deposition testimony [and therefore] should be stricken from paragraphs 3 and 4 of Martin's affidavit." (DE 78 at 2).

It does appear that Martin's affidavit identification of Officer Addison is contradictory with his prior deposition testimony that he did not know any of the officers when the incident occurred. Even where a subsequent affidavit is contradictory to prior sworn deposition

testimony, however, a court may accept the statement in the affidavit if the party presents a suitable explanation for the discrepancy, such as "a confusing deposition question, circumstances indicating a lapse of memory, relevant new information discovered after the original testimony, or ambiguous or incomplete earlier testimony." *Patton*, 480 F.3d at 488 (citations omitted). *See also Commercial Underwriters Ins. Co. v. Aires Envtl. Servs., Ltd.*, 259 F.3d 792, 799 (7th Cir. 2001) (citing *Maldonado v. U.S. Bank*, 186 F.3d 759, 769 (7th Cir. 1999)). Here, Martin states that "after or during the incident," he "may have identified Defendant Addison in any number of ways such as by badge, verbal statement, or inquiry." (DE 77 at 3). The Court agrees that Martin may have later learned the identity of an officer involved in the incident to be Officer Addison. Whether Martin's identification of Officer Addison as an involved officer is credible is a matter for the jury to decide, not the Court.

Finally, with regard to how Martin learned that police officers had gone to his home on the date in question, Martin states in his affidavit that he "learned from [his] then-girlfriend Amanda Del[e]grange that police officers had gone to [their] home shortly after [he] had left it that day." (DE 69-1 ¶ 6). In contrast, during his deposition, Martin stated that the officers had taken him to "the end of Masterson and Barr," "[a]bout a couple houses" from his home, and he "noticed a lot of other officers [were] at the residence by then." (DE 71-2 at 7). While Defendants argue that Martin's statement in his affidavit is contradictory with his deposition testimony regarding how he learned that officers had gone to his house on December 15, 2010, the Court does not agree. Martin may have both seen the police officers at his home from his location inside the patrol car and have been informed by Ms. Delegrange that officers had come to their home shortly after Martin had left it. These statements do not contradict each other, and

therefore the Court will not strike them as contradictory.

Thus, to the extent that Martin's affidavit statements contradict his prior deposition testimony, such statements will not be stricken under the "sham rule" because they do not rise to the level of plainly incredible. Rather, any such inconsistencies are issues of credibility to be determined by the jury. For these reasons, Defendants' motion to strike will be DENIED with respect to Martin's affidavit statements that Defendants argue are contradictory to Martin's prior deposition testimony.

### 2. Martin's Affidavit Statement Regarding Officer Addison Will Be Stricken Because It Fails to Meet the Personal Knowledge Requirement, Not Because It Is Self-Serving

"Deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). Thus, the Seventh Circuit Court of Appeals has made it clear that, "as [it] has repeatedly emphasized over the past decade, the term 'self[-]serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Id.* (overruling cases that suggested a plaintiff may not rely upon self-serving evidence to create a material factual dispute). "It is not the self-serving nature of [a]n affidavit[]" that makes it inadmissible, but rather it is because the affidavit is "not based on personal knowledge as required by both the Federal Rule of Civil Procedure on summary judgment, Rule 56(e) [(now Rule 56(c)(4))] ('supporting and opposing affidavits shall be made on personal knowledge'), and by Federal Rule of Evidence 602 ('A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.')." *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (noting that each party's

testimony is inherently self-serving); *see also Wilson v. McRae's, Inc.*, 413 F.3d 692, 694 (7th Cir. 2005); *Dalton v. Battaglia*, 402 F.3d 729, 735 (7th Cir. 2005). "[A] self-serving affidavit supported by facts in the record could defeat summary judgment." *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (citing *Payne*, 337 F.3d at 773). "The record, moreover, may include the self-serving affidavit itself, provided that the affidavit 'meets the usual requirements for evidence on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there was a genuine issue for trial.'" *Id.* (quoting *Payne*, 337 F.3d at 773).

Here, Defendants contend that Martin's statement in paragraph 4—that he "believe[s] Officer Addison was one of these officers" (DE 69-1 ¶ 4)—should be stricken because it is self-serving and without factual support in the record. (DE 73 at 6). Defendants further contend that the statement should be stricken because it is vague and speculative. (DE 73 at 6). Martin, in his response, contends that Defendants attack his affidavit statement as self-serving without any explanation. (DE 77 at 4). Martin also argues that the mere fact an affidavit is self-serving does not require the Court to disregard it on summary judgment. (DE 77 at 4). In their reply brief, Defendants agree that an affidavit is not precluded from consideration merely because it is self-serving, but Defendants emphasize that the Court should not consider self-serving affidavits *without factual support in the record*. (DE 78 at 2).

Here, the Court must determine whether Martin's affidavit statement—that he "believe[s] Officer Addison was one of these officers" (DE 69-1 ¶ 4)—should be considered for purposes of summary judgment, by looking to whether "it meets the requirements of evidence on summary judgment," *Buie*, 336 F.3d at 506 (citing *Payne*, 337 F.3d at 773). Rule 56(c) governs affidavits

14

in support of summary judgment motions, and it requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

The Seventh Circuit, as well as district courts in this circuit, have found that affidavits which state facts on belief cannot be considered in determining whether there is a genuine issue of material fact because they do not satisfy the requirement of personal knowledge.  *See, e.g.*, *Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir. 1994) (citing *Powers v. Dole*, 782 F.2d 689, 695 (7th Cir. 1986)) ("Statements of 'beliefs' or 'opinions' are insufficient to create a genuine issue of material fact.").  The "requirement of personal knowledge is mandatory.  Ultimate or conclusory facts and conclusions of law, as well as statements made on belief or 'on information and belief' cannot be utilized on a summary judgment motion."  *Toro Co. v. Krouse, Kern & Co.*, 827 F.2d 155, 162 n.3 (7th Cir. 1987) (discussing Fed. R. Civ. P. 56(e), which is now Fed. R. Civ. P. 56(c)(4)); *see also United States v. Crispen*, 622 F. Supp. 75, 81 (N.D. Ill. 1985) (citations omitted) ("Statements in affidavits made upon information and belief may, of course, be disregarded as not meeting the personal knowledge requirement."); *In re KJK Constr. Co.*, 414 B.R. 416, 429 (Bankr. N.D. Ill. 2009) (citations omitted) ("It is the affiant's personal knowledge, and not his beliefs, opinions, rumors, or speculation, that is admissible at trial and the proper subject of any affidavit.").  "Affidavits based on 'information and belief'—facts that the affiant believes are true, but which the affiant does not know are true—are not proper."  *Abdullah v. Frank*, No. 04C1181, 2007 WL 636185, at *5 (E.D. Wis. Feb. 26, 2007) (citing *Toro Co. v. Krouse, Kern & Co.*, 827 F.2d 155, 162-63 (7th Cir. 1987); *Friedel v. City of Madison*,

832 F.2d 965, 970 (7th Cir. 1987)); *see also Weiss v. Cooley*, 230 F.3d 1027, 1034 (7th Cir. 2000) (finding that portions of an affidavit which "merely asserted various facts 'on information and belief' . . . [did not] satisfy the personal knowledge requirement for affidavits").

Martin's statement in his affidavit that he "believe[s] Officer Addison was one of these officers" (DE 69-1 ¶ 4) is not based upon his personal knowledge, and the Court must therefore disregard this portion of Martin's affidavit because it does not comply with the requirements of Rule 56(c)(4). The Court is not weighing the evidence with regard to this statement; but rather, the Court is disregarding it entirely because it fails to meet the personal knowledge requirement. Accordingly, Defendants' motion to strike will be GRANTED with respect to Martin's statement in paragraph 4 that he "believe[s] Officer Addison was one of these officers" (DE 69-1 ¶ 4) on the basis that it is not based on Martin's personal knowledge.

### 3.  Martin's Affidavit Statement Regarding Consent Will Be Stricken As Irrelevant

"Evidence is relevant if: (a)  it has any tenancy to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. All relevant evidence is admissible, with certain exceptions, and evidence that is not relevant is not admissible. Fed. R. Evid. 402; *see also Baugh v. City of Milwaukee*, 823 F. Supp. 1452, 1458 (E.D. Wis. 1993) ("All relevant evidence is admissible, and the standard for relevance is quite low.  It merely requires that the evidence 'have a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" (citing Fed. R. Evidence 401 & 402)). "[A]n affidavit should be excluded only when its irrelevance is clear." *Lyons Sav. and Loan*

*Ass'n v. Geode Co.*, 641 F. Supp. 1313, 1318 (N.D. Ill. 1986) (citing 10A Charles Alan Wright &

Arthur R. Miller, *Federal Practice and Procedure* § 2738 (1983)). "[T]he relevance of an

affidavit should be tested on the basis of the issues presented in the motion." 10A Charles Alan

Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (3d ed.).

Here, Defendants argue that Martin's statement in paragraph 6 of his affidavit—that he

never gave consent for officers to search his home on December 15, 2010—is irrelevant to the

pending motion for summary judgment, as it is "undisputed that Martin was not present at his

home at 214 East Masterson when the Fort Wayne Police arrived." (DE 73 at 7). Defendants

contend that "Martin could not have given consent for entry or search of the residence unless he

were present," and that "[i]t does not even matter if Martin gave consent," as "Martin's

girlfriend, Amanda Delegrange, lived at the residence and did not object to the officers' presence

at the residence." (DE 73 at 7). Defendants therefore argue that this statement should be stricken

from paragraph 6 because it is not of consequence to the determination of any of the issues on

summary judgment. (DE 73 at 7).

In response, Martin contends that he "does not agree" that his statement regarding never

having given consent is irrelevant. (DE 77 at 4). Martin states that "[r]ather, that both

Defendants and Plaintiff agree that Plaintiff did not consent to Defendant Addison's entry into

his residence is on its face relevant to Plaintiff's unlawful entry claim." (DE 77 at 4). In their

reply brief, Defendants argue that Martin's response "misses the point," because whether

Defendants agree that Martin did not consent to any search "does not matter," as the statement

"is irrelevant because Martin was not present to give consent." (DE 78 at 3).

While Martin contends that this statement is relevant "on its face" to his unlawful entry

claim (DE 77 at 4), Martin fails to provide any explanation, argument, or citation to authority in support of his contention. Furthermore, Martin fails to identify any fact of consequence this statement tends to make more or less probable. The Court agrees with Defendants that Martin's statement is completely irrelevant to his unlawful entry claim or any other matter at issue in the summary judgment motion. Martin's affidavit statement that he did not give permission to the officers to search the residence does not tend to make it more or less probable that the officers unlawfully entered or searched his home, because both parties have agreed that Martin was not present at the house when the officers were there. For these reasons, Defendants' motion to strike will be GRANTED with regard to Martin's affidavit statement in paragraph 6 that he did not "give permission to any police officer to enter or to search [his] home" (DE 69-1 ¶ 6) on December 15, 2010.

### C. Conclusion

Accordingly, for the reasons explained in detail above, Defendants' motion to strike portions of Martin's affidavit (DE 72) is GRANTED IN PART and DENIED IN PART as follows:

1. Defendants' motion to strike is GRANTED with respect to Martin's statement in paragraph 4 of his affidavit that he "believe[s] Officer Addison was one of these officers." (DE 69-1 ¶ 4);

2. Defendants' motion to strike is GRANTED with respect to Martin's statement in paragraph 6 of his affidavit that "[a]t no time during December 15, 2010 did [he] ever give permission to any police officer to enter or to search [his] home." (DE 69-1 ¶ 6); and

3. Defendants' motion to strike is DENIED with respect to Martin's affidavit statements that Defendants contend are

18

contradictory to Martin's prior sworn deposition testimony.

The Court will not consider these stricken portions of Martin's affidavit when evaluating Defendants' motion for summary judgment.

## II.  MOTION FOR SUMMARY JUDGMENT

Defendants' motion for summary judgment (DE 65) will be GRANTED for the reasons that follow.

### *A.  Legal Standard*

On a motion for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment may be granted only if there are no disputed genuine issues of material fact.  *Payne*, 337 F.3d at 770.  When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder."  *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial."  *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted.  *Payne*, 337 F.3d at 770 (citation omitted).  A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants."  *Id.* (citation omitted).  However, "a party opposing summary judgment may not rest on the pleadings, but

must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771

(citing *Celotex Corp.*, 477 U.S. at 324).

### B. Facts and Background

In Martin's complaint, which he filed *pro se* prior to his current counsel's appointment by

the Court, he alleges that on December 15, 2010, several police officers with the Fort Wayne

Police Department entered his home illegally without a warrant, and he alleges that officers used

excessive force against him. In their respective filings, Martin and Defendants present

completely different versions of what took place on December 15, 2010. In their statement of the

facts, Defendants take the position that "Fort Wayne police officers had no contact with Anthony

Martin on December 15, 2010." (DE 66 at 3 (citing DE 65-1 ¶ 3)). Defendants have supported

their position with various affidavits and departmental records. (DE 65-1 to 65-4). Martin, in his

response brief, tells a very different story through his affidavit. (DE 70; DE 69-1). And while

Martin's version of what happened is completely different from Defendants' version, the Court

must construe the facts most favorably to Martin, as he is the non-moving party in this summary

judgment motion.

In his affidavit,[1] Martin describes what took place on December 15, 2010. (DE 69-1). He

states that he was living at 214 East Masterson in Fort Wayne, Indiana, with his then-girlfriend,

Amanda Delegrange.[2] (DE 69-1 ¶ 2). During an argument that he and Ms. Delegrange were

---

[1] The portions of Martin's affidavit which were stricken by the Court's ruling on Defendants' motion to strike will not be considered as part of the facts for purposes of summary judgment.

[2] Martin's affidavit contains two different spellings of the last name of his former girlfriend. For consistency, the Court will use the first spelling and refer to her as Ms. Delegrange.

having that night, she snatched a phone from his hand, and her lip was injured and began to bleed.  (DE 69-1 ¶ 2).  Martin left the house while Ms. Delegrange went upstairs to clean herself up.  (DE 69-1 ¶ 2).

Soon after this, at approximately 8:48 a.m., several Fort Wayne Police Department officers, including Officer Addison, were dispatched to the residence to investigate a "domestic in progress."  (DE 65-2 ¶ 3).  A 911 call had been placed by one of Ms. Delegrange's children to report that "mom and dad are fighting and mom is bleeding."  (DE 65-2 ¶¶ 3, 7).  When Officer Addison arrived at the residence, the front door was open, but the screen door was closed, so he knocked and announced "Fort Wayne Police."  (DE 65-2 ¶ 4).  Officer Addison did not receive any response, so he entered the house "to make sure everyone was okay since this was a domestic in progress call."  (DE 65-2 ¶ 4).  Officer Addison found Ms. Delegrange, who came into the house from the backyard.  (DE 65-2 ¶ 4).  Ms. Delegrange was crying and packing some clothing.  (DE 65-2 ¶ 4).  She informed Officer Addison that she had been in a fight with her boyfriend, Martin, who had hit her in the face.  (DE 65-2 ¶¶ 4-5).  Ms. Delegrange willingly spoke to Officer Addison and did not ask him or the other officers to leave at any time.  (DE 65-2 ¶ 4).  Officer Addison took photographs of the injuries to Ms. Delegrange's face.  (DE 65-2 ¶ 6).  Martin was not at the house when Officer Addison and the other officers arrived.  (DE 65-2 ¶ 8).  Officer Addison and the officers did not search the house.  (DE 65-2 ¶ 10).  Officer Addison did not conduct a traffic stop of Martin on December 15, 2010, or on any other date; he did not arrest Martin on December 15, 2010, or on any other date; and he did not have any contact with Martin on December 15, 2010.  (DE 65-2 ¶¶ 8, 11).

Martin states in his affidavit that it is his "recollection" that when he was almost home,

his vehicle was stopped by five or six Fort Wayne Police Department officers, who "surrounded [his] car and ordered [him] out." (DE 69-1 ¶ 3). "When [his] car door was opened, [he] was snatched out, slammed to the ground face down, and handcuffed roughly, with a lot of pressure pressed down on [his] wrists and upper arms, causing [him] pain." (DE 69-1 ¶ 3). The officers also put pressure on his neck and throat, which made him feel like he was choking. (DE 69-1 ¶ 3). Martin complied with the officers, as he did not try to fight, struggle, run, or threaten any of the officers. (DE 69-1 ¶ 5). The officers put Martin in the back of a patrol car, and he was not allowed to leave. (DE 69-1 ¶ 3). After about an hour, the officers removed Martin's handcuffs and allowed him to leave, but they told him they would take him to jail if he went home. (DE 69-1 ¶ 3). Martin later learned from Ms. Delegrange that officers had come to their home shortly after Martin had left. (DE 69-1 ¶ 6).

As a result of this incident, Martin filed the instant lawsuit against a lengthy list of defendants. (DE 1). After the Court granted a motion to dismiss (DE 21; DE 14), the remaining Defendants in this case are Officer Addison, the City of Fort Wayne, and the Fort Wayne Police Department, who have file the instant motion for summary judgment.

In his complaint, Martin alleges that Officer Addison violated his constitutional rights by entering his home without a warrant, by detaining him while using excessive force, by subjecting him to cruel and unusual punishment, and by failing to intervene when other officers violated his constitutional rights. (DE 1 at 3-4). Martin also alleges that the City of Fort Wayne and the Fort Wayne Police Department are responsible for these acts. (DE 1 at 3-4). Additionally, Martin alleges that Defendants are liable for state law claims of harassment, threats, malicious prosecution, intimidation, defamation, retaliation, and causing mental anguish. (DE 1 at 3-4).

### *C. Discussion*

Defendants argue that they should be granted summary judgment on each of Martin's claims against them. (DE 66 at 6). In Martin's response to Defendants' motion, he states that he will not be proceeding on any claims against the Fort Wayne Police Department. (DE 70 at 2). Martin further states that he will only be proceeding with state law claims against the City of Fort Wayne. (DE 70 at 2). Additionally, Martin states that he will only be proceeding further with the state law claims against the City of Fort Wayne and Officer Addison that "are not exempt from the law enforcement immunity provisions listed under the Indiana Tort Claims Act," specifically his claims of harassment, malicious prosecution, retaliation, and intimidation. (DE 70 at 2-3). Martin states that he will not be proceeding with any claims under the First Amendment. (DE 70 at 3). Martin also states that he will not be proceeding with his claims of cruel and unusual punishment under the Eighth Amendment. (DE 70 at 14).

Martin states that he will be proceeding with his federal claim against Officer Addison for excessive force; his federal claim against Officer Addison for the unlawful entry and search of his home; his federal claim against Officer Addison for failure to intervene; his state tort claim of false arrest against Officer Addison and the City of Fort Wayne; and his state tort battery claim against the City of Fort Wayne based upon Officer Addison's and the other officers' use of excessive force. (DE 70 at 2).

The Court need not address further the claims on which Martin has stated he is no longer proceeding; Defendants' motion for summary judgment will be GRANTED as to these claims. The Court will address each of Martin's remaining claims against Defendants as follows.

## 1. Martin's Excessive Force Claim
## Against Officer Addison

Martin is proceeding with his excessive force claim under § 1983 and the Fourth Amendment against Officer Addison, which stems from the incident in which his vehicle was stopped on December 15, 2010. (DE 1 at 3; DE 70 at 7-10). "While the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physicial coercion or threat thereof to effect it, the Fourth Amendment prohibits the use of excessive force during the execution of a seizure." *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000) (citations and internal quotation marks omitted). The constitutional measure of an officer's use of force under the Fourth Amendment is whether the officer's actions were "objectively reasonable in light of the facts and circumstances confronting [him] . . . ." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (citations and internal quotation marks omitted). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)) (internal quotation marks omitted).

Here, the facts would not allow a reasonable jury to find that Officer Addison used excessive force against Martin in violation of his Fourth Amendment rights. Martin has presented no evidence that Officer Addison was present during the stop of his vehicle by police officers on December 15, 2010.[3] While Martin does allege in his complaint that Officer

---

[3] While Martin's affidavit included a statement that he "believe[s] Officer Addison was one of these officers" who were present during the incident (DE 69-1 ¶ 4), this statement was stricken by the Court (*see* Part I (B)(2) above) because it did not meet the standard for evidence on summary judgment under Federal Rule of Civil Procedure 56(c).

Addison, along with other unknown officers, acted with excessive force against him, Martin

cannot rest on the allegations in his complaint to avoid summary judgment.  *See Omnicare, Inc.*

*v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011)(stating that the plaintiff "cannot

merely rest on its pleadings; it must affirmatively demonstrate, by producing evidence that is

more than 'merely colorable,' that there is a genuine issue for trial." (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 249 (1986))); *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th

Cir. 1996) ("If the nonmoving party bears the burden of proof on an issue, he must then go

beyond the pleadings and affirmatively demonstrate a genuine issue of material fact for trial.").

There is no evidence that would enable a reasonable jury to find that Officer Addison used

excessive force against Martin on December 15, 2010.  Thus, Defendants are entitled to

judgment as a matter of law on this claim, and their motion for summary judgment will be

GRANTED with respect to Martin's claim of excessive force against Officer Addison.

## 2.  Martin's Unlawful Entry and Search Claim Against Officer Addison

Next, Martin is proceeding with his claim under § 1983 and the Fourth Amendment

against Officer Addison for the unlawful entry and search of Martin's home.  The Fourth

Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers,

and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants

shall issue, but upon probable cause, supported by Oath or affirmation, and particularly

describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend.

IV.  "A warrantless search or seizure is "*per se* unreasonable unless the police can show that it

falls within one of a carefully defined set of exceptions based on the presence of 'exigent

circumstances'", *United States v. Bennett*, 908 F.2d 189, 192 (7th Cir. 1990) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 474-75 (1971)), or another exception to the warrant requirement, such as consent, *see, e.g.*, *United States v. Jackson*, 598 F.3d 340, 346 (7th Cir. 2010) ("A well-recognized exception to the warrant requirement applies, however, when someone consents to a search.").

Under the exigent circumstances doctrine, "[t]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe a person within is in need of immediate aid." *United States v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000) (quoting *Mincey v. Arizona*, 437 U.S. 385, 392 (1978)) (internal quotation marks omitted). The Seventh Circuit "has found that exigent circumstances justified a warrantless search where the police reasonably feared for the safety of someone inside the premises," but "a police officer's subjective belief that exigent circumstances exist is insufficient to make a warrantless search." *Id.* (citations omitted). The test is an objective one, not a subjective one: "the government must establish that the circumstances as they appeared at the moment of entry would lead a reasonable, experienced law enforcement officer to believe that someone inside the house, apartment, or hotel room required immediate assistance." *Id.* (quoting *United States v. Arch*, 7 F.3d 1300, 1304 (7th Cir. 1993)) (internal quotation marks omitted).

Here, Defendants argue that they are entitled to summary judgment on Martin's unlawful entry and search claim against Officer Addison because they contend that exigent circumstances existed to enter the residence, Ms. Delegrange consented to the officers' entry, and none of the officers searched the residence. (DE 66 at 9-11). Defendants argue that Officer Addison's entry into the residence was justified by exigent circumstances because the 911 call reporting the

domestic disturbance gave the officer reason to believe that someone inside the home was in danger. (DE 6 at 9-10). Additionally, Defendants argue that the officers' entry was proper even if exigent circumstances did not exist, because they content that Ms. Delegrange implicitly consented to the officers' entry by freely speaking to them and not asking them to leave. (DE 66 at 10). Finally, Defendants state that there was no actual search of the residence by officers. (DE 66 at 11).

In response, Martin argues that he did not give consent for officers to enter his home, and he states that "it is undisputed that [Officer] Addison entered the home without permission from Ms. Del[e]grange." (DE 70 at 10). Martin contends that Ms. Delegrange was not even in the house when Officer Addison entered, but rather was in the backyard, and therefore she could not have consented to his entry into the home. (DE 70 at 10-11). Martin further argues that Ms. Delegrange's willingness to speak with officers after they entered the home did not "evidence any 'consent'" after the entry had already occurred. (DE 70 at 11). Martin contends that Ms. Delegrange was likely intimidated by the four officers in uniform, who were already in her home without permission, and therefore was afraid to order them out. (DE 70 at 11). Additionally, Martin argues that exigent circumstances did not exist to justify the entry into the home by Officer Addison because he states that "[Officer] Addison was not in hot pursuit of anyone, there was no danger of destruction of evidence, . . . [Officer] Addison's entry had nothing to do with trying to prevent anyone's escape," and "he had no reason to believe anyone inside was in immediate danger of harm" as Officer Addison "saw nothing out of the ordinary inside and heard nothing out of the ordinary" as there was "no evidence of physical altercation inside, no sounds of fighting or even arguing, and no yells for help." (DE 70 at 12). Martin therefore contends that

because there was no consent or exigent circumstances to justify Officer Addison's entry into the home, the entry was an unlawful violation of his Fourth Amendment rights. (DE 70 at 12).

Martin also argues in his response that any search made by Officer Addison or the other officers after their entry into the home was also a violation of his Fourth Amendment rights, because no one gave them consent to search the home, and there was "no need to perform a protective sweep of the home," because Martin "had already left the home, Del[e]grange was in the backyard, and there was no evidence that any disturbance was occurring in the home upon [Officer] Addison's arrival." (DE 70 at 13).

In their reply brief, Defendants contend that Martin's arguments that Ms. Delegrange consented to Officer Addison's and the other officers' continued presence in the house due to intimidation and the inherent coercion of the interview "is pure speculation" without citation to legal authority. (DE 74 at 3-4). Defendants note that Martin has not provided an affidavit from Ms. Delegrange to show that she felt coerced by the officers, and the only evidence in the record is Officer Addison's sworn affidavit statement that Ms. Delegrange spoke to him willingly. (DE 74 at 4). Defendants also argue that Ms. Delegrange was capable of consenting to the officers' presence in the house because she possessed common authority over the shared residence. (DE 74 at 6). Defendants further argue that Officer Addison's entry into the home was reasonable because exigent circumstances existed, given the 911 call by a child reporting that her parents were fighting and her mother was bleeding. (DE 74 at 4). Defendants argue that the fact that there was no yelling or screaming when Officer Addison arrived to the house is not determinative, because "[n]o noi[s]e or sounds can be a worse situation." (DE 74 at 5). Finally, Defendants argue that while "Officer Addison's sworn testimony indicates that there was no

search of the home by him or any other Fort Wayne police officer," "Martin has not designated any evidence showing a genuine issue of material fact as to whether a search was performed." (DE 74 at 6).

In Martin's surresponse in opposition to Defendants' reply brief, Martin reiterates his arguments and states that "[g]enuine issues of material fact remain regarding [his] claims of unlawful entry and search." (DE 76 at 2). In Defendants' surreply brief, they also reiterate their previously made arguments and contend that they are entitled to summary judgment on the unlawful search and unlawful entry claims because Martin has submitted no admissible evidence to contradict the evidence submitted by Defendants, which shows that there were exigent circumstances to enter the residence and that Ms. Delegrange consented to the officers' presence in the residence. (DE 79 at 2).

First, the Court will address whether the entry by Officer Addison into the home was justified by the consent exception to the warrant requirement. The Court is unpersuaded by Defendants' arguments that, as a matter of law, Officer Addison's entry into the home was justified by Ms. Delegrange's consent. Defendants argued that consent does not have to be explicitly verbal, and they provided citation to authority in support of that argument. However, Defendants have failed to provide any citation to authority to support an argument that the consent exception to the warrant requirement is satisfied by an implicit, after-the-fact consent by someone who was not in the home at the time officers entered. Regarding Martin's arguments that Ms. Delegrange did not consent because she was coerced or intimidated into speaking with the officers and allowing them to remain in the home, Defendants are correct that the only evidence in the record is Officer Addison's statement that Ms. Delegrange willingly spoke to him

and did not ask him or the other officers to leave. Thus, Martin's intimidation and coercion arguments fail. Still, the Court cannot find that, as a matter of law, the entry into the house by Officer Addison and the other officers was justified by Ms. Delegrange's supposed after-the-fact implicit consent. This finding is not determinative as to this claim, however, because the Court does find that exigent circumstances justified the entry.

The Seventh Circuit has made it clear "that 911 calls reporting an emergency can be enough to support warrantless searches under the exigent circumstances exception," particularly where the caller identifies himself. *Richardson*, 208 F.3d at 630 (citations omitted) (noting that 911 calls are "one of the most common—and universally recognized—means through which police and other emergency personnel learn that there is someone in a dangerous situation who urgently needs help"). The Seventh Circuit further iterated the importance that "the police (and other rescue agents) be able to respond to such calls quickly and without unnecessary second-guessing," because "'[p]eople could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process.'" *Id.* (citing *Wayne v. United States*, 318 F.2d 205, 212 (D.C. Cir. 1963) (Burger, J.)).

Here, an objective assessment of the situation supports a conclusion that Officer Addison's warrantless entry into the home was justified by exigent circumstances. Officer Addison and the other officers were responding to a 911 call by a child who had reported that her parents were fighting and her mother was bleeding. A reasonable officer in Officer Addison's situation—who received no response when he knocked at an open front door, who did not know the current status of the bleeding mother or the child caller, and who did not know that the alleged cause of the danger (Martin) had left the premises—would believe that his warrantless

entry was necessary "to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Hawkins v. Mitchell*, 756 F.3d 983, 992 (7th Cir. 2014). As this Court has previously stated, "[c]ourts have recognized the combustible nature of domestic disputes, and have accorded great latitude to an officer's belief that warrantless entry was justified by exigent circumstances when the officer had a substantial reason to believe that one of the parties to the dispute was in danger." *Neal v. Pauley*, No. 1:12cv343, 2014 WL 2452983, at *4 (N.D. Ind. June 2, 2014) (citations and internal quotation marks omitted) (noting that "[e]vidence of extreme danger in the form of shots fired, screaming or blood is not required for there to be some reason to believe that a safety risk exists"). For these reasons, summary judgment will be GRANTED to Defendants on the unlawful entry claim against Officer Addison.

Additionally, although Martin continues to state that Officer Addison conducted an unlawful search of his home on December 15, 2015, and that summary judgment is precluded by genuine issues of material fact existing regarding the unlawful search claim (DE 70 at 13; DE 76 at 2), the only fact in evidence before the Court regarding a search is Officer Addison's affidavit statement that neither he nor the other officers searched the residence (DE 65-2 ¶ 10). On this evidence, no reasonable jury could find for Martin, and thus summary judgment will also be GRANTED to Defendants on Martin's unlawful search claim against Officer Addison.

### 3. Federal Claim Against Officer Addison for Failure to Intervene

Martin has stated that he is proceeding with his claims against Officer Addison "for violations of his rights based upon bystander liability." (DE 70 at 13). As stated by Martin in his response brief, "[i]n order to be found liable to a plaintiff for excessive force under a bystander liability theory, the plaintiff must show that an officer '(1) had reason to know that a fellow

officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring.'" (DE 70 at 13 (quoting *Smith v. Fries*, No. 1:11-CV-237, 2013 WL 1192602, at *6 (N.D. Ind. Mar. 22, 2013))); *accord Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009).

Here, just as above with regard to Martin's excessive force claim against Officer Addison, the facts would not allow a reasonable jury to find for Martin on this claim. A reasonable jury could not find that Officer Addison was liable to Martin for excessive force under a bystander liability theory, because there is no evidence that Officer Addison was present during the stop of Martin's vehicle by police officers on December 15, 2010. Thus, summary judgment will be GRANTED to Defendants on Martin's claim against Officer Addison for failure to intervene.

### 4. State Law Claims Against Officer Addison and the City of Fort Wayne

In his response, Martin states that he is proceeding with his state tort claims for false arrest/false imprisonment against both Officer Addison and the City of Fort Wayne, as well as his state tort claim for battery against the City of Fort Wayne. (DE 70 at 2). Defendants, in their reply brief, contend that Martin never alleged state claims of false arrest, false imprisonment, or battery in his complaint. (DE 74 at 11). Defendants argue that Martin sets forth his state law claims on page 4 of his complaint, and none of the claims "even come close to making out a state tort battery claim or claim of false arrest and false imprisonment," so Defendants contend that Martin failed to comply with Rule 8 of the Federal Rules of Civil Procedure. (DE 74 at 11-12). Defendants thus argue that any state tort false arrest, false imprisonment, or battery claim should be barred. (DE 74 at 12).

Martin, in his surresponse, does not address Defendants' contention that he never alleged claims of false arrest or false imprisonment in his complaint. (DE 76 at 5-6). Instead, he argues the merits of these claims. Martin does address Defendants' argument that he failed to allege a state tort battery claim in his complaint, stating that "[t]his argument does not square with the face of Plaintiff's pleadings and Plaintiff's evidence." (DE 76 at 6). Martin quotes the factual allegations from his complaint that he was "slammed to the ground forcefully" and "roughly handcuffed," and he states that Officer Addison used excessive force against him. (DE 76 at 6 (quoting DE 1 at 1, 3)). Martin then states that "[t]his type of force constitutes tortious battery for which the Defendant City of Fort Wayne is liable," citing *Wilson v. Isaacs*, 929 N.E.2d 200, 203-04 (Ind. 2010), apparently in support of his contention. (DE 76 at 6).

In their surreply brief, Defendants argue that "[e]ven if the Tort Claim Notice requirements were met, and even if Martin's complaint set forth claims for battery, false arrest, or false imprisonment, Martin's state law claims still fail," as the City of Fort Wayne has presented evidence showing that Fort Wayne Police officers had no interaction with Martin on December 15, 2010, and Defendants contend that Martin has failed "to present any admissible evidence to the contrary." (DE 79 at 5).

Martin did not allege state claims of battery, false arrest, or false imprisonment in his complaint. In Count 3 of his complaint, Martin alleges claims of unlawful entry, excessive force, and cruel and unusual punishment against Officer Addison and the City of Fort Wayne. (DE 1 at 3). In Count 4, Martin alleges a claim against Officer Addison for his failure to intervene. (DE 1 at 3). In Count 5, Martin alleges claims against Officer Addison and the City of Fort Wayne for threats, intimidation, and "premeditated action" against Martin. (DE 1 at 3). In Count 6 of his

complaint, Martin alleges claims of defamation, harassment, retaliation, and vindictive behavior against the City of Fort Wayne and Officer Addison.  (DE 1 at 3).  None of Martin's claims against the City of Fort Wayne allege a state tort claim of battery, false arrest, or false imprisonment.  In fact, none of the counts even mention the words "battery," "false arrest," or "false imprisonment."  (DE 1 at 2-3).

Where a plaintiff fails to raise a claim in his complaint, he waives that claim; the plaintiff cannot raise a new claim in his response to a motion for summary judgment.  *See Anderson v. Donahoe*, 699 F.3d 989, 997-98 (7th Cir. 2012) (explaining that claims not alleged in a plaintiff's complaint are waived and cannot be added in a response to the defendant's motion for summary judgment, as to allow a plaintiff to make new claims in a response to a motion for summary judgment would be to amend the complaint without providing defendant the fair notice required by the federal pleading rules); *Warren v. Solo Cup Co.*, 516 F.3d 627, 629 n.3 (7th Cir. 2008); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 735 F. Supp. 2d 856, 911 (N.D. Ill. 2010).

Because Martin did not allege state tort claims of battery, false arrest, or false imprisonment in his complaint, he cannot now amend his complaint via his response brief in opposition to Defendants' motion for summary judgment.  Amendment at this stage of the proceeding is not timely and would be prejudicial to Defendants, who have relied upon Martin's complaint, and who would not receive fair notice as required by the Federal Rules.  Thus, the Court rejects these claims, which therefore do not create any genuine issue of material fact to prevent summary judgment.

Even if Martin had these pled battery, false arrest, and false imprisonment claims, Defendants would be entitled to summary judgment on these claims.  To the extent the purported

battery claim was based on the actions of Officer Addison, the Court has already concluded, *supra*, that there is no evidence before the Court establishing that Officer Addison used excessive force against Martin on the date in question.  *See Estate of Williams v. Ind. State Police*, 26 F. Supp. 3d 824, 863 (S.D. Ind. 2014 ("A battery claim under Indiana Law alleging excessive force by law enforcement is measured by the same standards . . . for excessive force under the Fourth Amendment.").  Thus, such a state tort battery claim would fail on its merits, and Defendants would be granted summary judgment on the claim.

Additionally, if Martin had pled the false arrest and false imprisonment claims against Officer Addison, Addison, the facts would not allow a reasonable jury to find for Martin on this claim.  A reasonable jury could not find that Officer Addison was liable to Martin for false arrest or false imprisonment, because there is no evidence that Officer Addison was present during the stop of Martin's vehicle by police officers on December 15, 2010.  Thus, even if Martin had pled a state claim of false arrest or false imprisonment against Officer Addison, Defendants would be granted summary judgment on such a claim.

Furthermore, if Martin had pled the battery, false arrest, and false imprisonment claims against the City of Fort Wayne in his complaint, these claims would be procedurally barred due to Martin's failure to comply with the notice requirements of the Indiana Tort Claims Act ("ITCA").  "Under the doctrine of respondeat superior, an employer is liable for the acts of its employees which were committed within the course and scope of their employment." *Brown v. City of Fort Wayne*, 752 F. Supp. 2d 925, 957 (N.D. Ind. 2010) (quoting *City of Fort Wayne v. Moore*, 706 N.E.2d 604, 607 (Ind. Ct. App. 1999)).

However, because these are state law claims against a municipality, ITCA bars bringing

suit on the claims unless a plaintiff timely complies with its notice requirements. *White v. Steuben Cty.*, No. 1:11-CV-019, 2011 WL 4496504, at *14 (N.D. Ind. Sept. 27, 2011) (citing Ind. Code § 34-13-3-8). ITCA requires a plaintiff to file notice within 180 days after the loss occurs with both "(1) the governing body of that political subdivision; and (2) the Indiana political subdivision risk management commission . . . ." Ind. Code § 34-13-3-8. This notice must provide "a short and plain statement of the facts on which the claim is based," including "the time and place the loss occurred, the names of all persons involved if known," as well as the "circumstances which brought about the loss," among other things. Ind. Code § 34-13-3-10. Such notice "must be in writing and must be delivered in person or by registered or certified mail." Ind. Code § 34-13-3-12. A plaintiff is not permitted to initiate a lawsuit against the governmental entity unless his claim was denied in whole or in part by the governmental entity. Ind. Code § 34-13-3-13.

"Compliance with the notice provisions of the ITCA is a procedural precedent which the plaintiff must prove and which the trial court must determine before trial." *Davidson v. Perron*, 716 N.E.2d 29, 34 (Ind. Ct. App. 1999) (citing *Ind. Dep't of Highways v. Hughes*, 575 N.E.2d 676, 678 (Ind. Ct. App. 1991)). Where a defendant asserts the plaintiff's failure to comply with ITCA's notice requirements as an affirmative defense, the burden then shifts to the plaintiff to prove timely notice under ITCA. *White*, 2011 WL 4496504, at *14 (citing *Davidson*, 716 N.E.2d at 34; *Wright v. Elston*, 701 N.E.2d 1227, 1233 (Ind. Ct. App. 1998)).

Here, Defendants assert that Martin never filed a tort claim notice pertaining to the incidents he alleges took place on December 15, 2010. (DE 66 at 19). Defendants thus argue that Martin's state law claims are precluded by his failure to comply with the notice provisions of

ITCA. (DE 66 at 19). Martin, in his response, contends that there "is a genuine issue of material fact as to whether [he] complied with the requirements of [ITCA] prior to filing his suit and alleging various state tort claims against the Defendants." (DE 70 at 19). Martin argues that "he did file a tort claim notice, after the December 15th incident although there is no information on when this occurred." (DE 70 at 20). Martin argues that the Defendants' records, which reflect that no notice was ever filed, are "potentially unreliable due to inadvertent loss or misplacement of a document after its receipt." (DE 70 at 20). Martin contends that a "reasonable inference exists that [he] filed a tort Claim Notice for the December 15, 2010 events complained of in this lawsuit, it was time[ly], but was inadvertently lost or misplaced by City personnel at some point during the roughly four years between receipt of the Notice, and when at the Defendants' behest, Sandra Kennedy reviewed the City's records and completed her affidavit for this case." (DE 70 at 20). Martin argues that all facts and reasonable inferences must be taken in the light most favorable to him, as the non-moving party, so there is a genuine issue of material fact that precludes dismissal of his state tort claims for failure to comply with ITCA's notice requirements. (DE 70 at 20).

In their reply brief, Defendants argue that Martin's affidavit testimony is insufficient to show compliance with ITCA's notice requirements, and Defendants emphasize that "[compliance with the notice provisions of the ITCA is a question of law for the Court; not a question of fact for the jury." (DE 74 at 11 (citing *Ind. State Highway Comm'n v. Morris*, 528 N.E.2d 468, 471 (Ind. 1988)). Defendants contend that they have presented evidence showing that there was no tort claim notice filed by Martin for the incident he alleges took place on December 15, 2010; Defendants further argue that Martin has the burden of proving that he has complied with ITCA's

notice requirements, a burden that he has failed to meet.  (DE 74 at 11).

In his surresponse brief, Martin states that Defendants have mischaracterized the cases they have cited in support of their argument that Martin has not complied with ITCA's notice requirements.  (DE 76 at 5).  Martin challenges Defendants' summary of *Morris*, that compliance with ITCA is a question of law, since "the case also states that a plaintiff's claims are 'not barred by reason of failure to comply with the statutory notice requirement.'"  (DE 76 at 5 (citing *Morris*, 528 N.E.2d at 471)).  Martin contends that the Court can find that he was in "substantial compliance with the statutory notice requirement" and can find that " a tort claim was submitted as a matter of law."  (DE 76 at 5).  Martin further argues that while Defendants' summary of *Hedges v. Rawley*, 419 N.E.2d 224, 277 (Ind. Ct. App. 1981), is correct that "a defendant may shift the burden to a plaintiff to show compliance with the ITCA," the dispute in *Hedges* "involved a letter 'that contained no information to apprise the [defendant] of potential tort liability,'" which Martin states is not the situation here, where he has "submitted evidence that he provided a proper tort claim."  (DE 76 at 5-6).  Martin therefore contends that "even if the burden has been shifted to him, he has met his burden," and cites to paragraph 7 of his affidavit in support of this contention.  (DE 76 at 6).

In their surreply to Martin's surresponse brief, Defendants argue that Martin has not shown substantial compliance with the statutory notice requirements, because the purposes of the notice requirement—"to inform the officials of the political subdivision with reasonable certainty of the accident and surrounding circumstances so that [the] political subdivision may investigate, determine its possible liability, and prepare a defense to the claim"—have not been satisfied.  (DE 79 at 4-5 (citing *Morris*, 528 N.E.2d at 471)).  Defendants contend that Martin's affidavit

statement in paragraph 7 "fails to prove that a Tort Claim Notice was filed with the City describing in a short and plain statement the facts on which the claim is based, including the circumstance which brought about the loss, the extent of the loss, the time and place that the loss occurred, the names of the persons involved, if known, and the amount of damages sought." (DE 79 at 5 (citing Ind. Code § 34-13-3-10)). Defendants therefore contend that Martin has failed to meet his burden of proof and has failed to show substantial compliance, so Defendants are entitled to summary judgment as a matter of law on all state claims in Martin's complaint. (DE 79 at 5).

Martin is correct that the Court can find that he was in substantial compliance with ITCA's notice requirements. *See Brown v. Alexander*, 876 N.E.2d 376, 382 (Ind. Ct. App. 2007) (citations omitted) (stating that when evaluating substantial compliance, the court "looks not to the information held by the governmental entity but instead to the efforts made by the claimant to notify the governmental entity of the claim," because substantial compliance "allows an action to proceed when a claimant has attempted to provide notice, has fallen short of the strictures of the statute, and yet has supplied the appropriate governmental entity with sufficient information to investigate the claim"). But either way, the determination of whether a plaintiff has complied or substantially complied with ITCA's notice provisions is a question of law for the Court to decide. *See id.* at 380 ("Compliance with the ITCA is a question of law properly determined by the court."); *Alexander v. City of South Bend*, 256 F. Supp. 2d 865, 876 (N.D. Ind. 2003) (citing *Collier v. Prater*, 544 N.E.2d 497, 499 (Ind. 1989)) ("Substantial compliance with the ITCA, while a fact-sensitive test, is a question of law.").

While Martin attempts to distinguish the case cited by Defendants regarding the burden

shifting to the plaintiff to prove compliance with ITCA's notice requirements, the burden does, in fact, shift to Martin to prove compliance because Defendants have raised his non-compliance as an affirmative defense. *See Alexander*, 256 F. Supp. 2d at 875 ("Once a defendant raises failure to comply with the ITCA's notice requirements, the burden shifts to the plaintiff to prove compliance."); *see also Eckhart v. Bourrell*, No. 2:10-CV-332-PRC, 2011 WL 38993, at *3 (N.D. Ind. Jan. 4, 2011); *Snyder v. Town of Yorktown*, 20 N.E.3d 545, 551 n.3 (Ind. Ct. App. 2014) ("If the defendant raises such affirmative defense, the burden shifts to the plaintiff to prove compliance with the ITCA's notice provisions.").

Here, Defendants have raised the issue of Martin's non-compliance with ITCA's notice requirements as an affirmative defense, and the burden therefore has shifted to Martin to prove his compliance. Martin has failed to meet this burden. The evidence before the Court regarding whether Martin complied with the notice requirements of ITCA consists of Martin's statements in his affidavit and Defendants' submission of the affidavit of Sandra Kennedy.

In Martin's affidavit, he states that he "ha[s] done Tort Claim Notices about City of Fort Wayne police officers' unlawful treatment of [him]" and that "[a]t least one of the Tort Claim Notices that [he has] done [were] completed after December 15, 2010." (DE 69-1 ¶ 7). These statements do not satisfy Martin's burden of proof to show compliance with ITCA's notice requirements. Martin vaguely states that he has "done" notices "about" the officers' treatment of him. (DE 69-1 ¶ 7). This statement fails to meet key provisions of ITCA's notice requirements, as the statement does not in fact state that Martin actually filed the notices at all; it fails to state that he filed the notices with the required entities, namely the City of Fort Wayne and the Indiana political subdivision risk management commission; and it fails to provide the required "short and

40

plain statement of the facts on which the claim is based," including "the time and place the loss occurred, the names of all persons involved if known," as well as the "circumstances which brought about the loss," Ind. Code § 34-13-3-10. Martin's affidavit statement that "[a]t least one of the Tort Claim Notices that [he has] done was completed after December 15, 2010" (DE 69-1 ¶ 7) also fails to meet ITCA's notice requirements, as this statement does not provide any information about the actual date that Martin made a tort claim notice; it fails to state that Martin made the tort claim notice within the 180 day period; and it fails to state that any tort claim notice that Martin made was even related to the incident he alleges took place on December 15, 2010, as it only states that he made a notice after that date.

For these reasons, contrary to Martin's assertions that he has "submitted evidence that he provided a proper tort claim and, even if the burden has been shifted to him, he has met his burden" (DE 76 at 6), Martin has failed to provide evidence that he ever provided *any* tort claim notice regarding this alleged incident to the City of Fort Wayne or the Indiana political subdivision risk management commission, let alone *timely* notice. The Court therefore concludes that Martin has failed to meet his burden to show actual compliance with ITCA's notice requirements.

Martin's affidavit statements also fail to show substantial compliance. His statements do not show that he provided the City of Fort Wayne with notice of the "full nature of the claim against it," which is the "crucial consideration" for substantial compliance. *Collier*, 544 N.E.2d at 499 (noting that "where a plaintiff, within the 180 day period, fails to file any notice of an intent to make a claim, actual knowledge of the occurrence on the part of the city, even when coupled with an investigation of the occurrence, will not suffice to prove substantial

compliance").  Martin's affidavit statements do not show that he provided any information to the City of Fort Wayne regarding the incident he alleges took place on December 15, 2010.  Thus, he has not met his burden to show substantial compliance with ITCA's notice requirements.

The only other evidence in the record before the Court regarding Martin's compliance with ITCA's notice provisions is Sandra Kennedy's affidavit, submitted by Defendants.  (DE 65-3).  In her affidavit, Ms. Kennedy states that she is the "custodian of all notice of tort claims filed against the City of Fort Wayne and any entity of the City of Fort Wayne, including the City of Fort Wayne Police Department."  (DE 65-3 ¶ 3).  Ms. Kennedy states that she has "reviewed the notice of tort claims filed against the City of Fort Wayne for the years 2010, 2011, and 2012," and her review showed that "[t]he City of Fort Wayne and the City of Fort Wayne Police Department did not receive a notice of tort claim from an Anthony C. Martin pertaining to any incidents occurring on December 15, 2010 on East Masterson Street or Barr Street in Fort Wayne, Indiana."  (DE 65-3 ¶ 5).

Thus, there is no evidence before the Court which establishes that Martin complied or substantially complied with ITCA's notice requirements.  Rather, all of the evidence before the Court establishes that Martin did not comply or substantially comply with ITCA's notice provisions.  Martin has failed to meet his burden; accordingly, even if Martin had pled state law claims of battery, false imprisonment, and false arrest against the City of Fort Wayne, summary judgment would be granted to Defendants on these claims.  *See Martin v. Fort Wayne Police Dep't*, No. 1:11-CV-350, 2014 WL 1319337, at *18 (N.D. Ind. Mar. 28, 2014) (granting summary judgment to defendants on all state law claims where the plaintiff failed to carry his burden of showing compliance or substantial compliance with ITCA's notice requirements);

*Boushehry v. City of Indianapolis*, 931 N.E.2d 892 (Ind. Ct. App. 2010) (granting summary judgment where plaintiff had failed to comply with ITCA's notice requirements); *Dameron v. City of Scottsburg*, 36 F. Supp. 2d 821, 836-39 (S.D. Ind. 1998) (granting summary judgment to the defendant governmental entity because the plaintiff had failed to comply with ITCA's notice requirements).

Accordingly, the Court rejects the state tort claim for battery against the City of Fort Wayne and the state tort claims for false arrest and false imprisonment against Officer Addison and the City of Fort Wayne, which Martin has attempted to raise in his response to the motion for summary judgment, because these claims were not made in his complaint. The Court notes, however, that even if Martin had made these claims for battery, false imprisonment, and false arrest in his complaint, summary judgment would have been granted to Defendants on the basis that Martin had failed to comply with the notice provisions of ITCA.

### D. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment (DE 65) will be GRANTED. The Clerk is DIRECTED to enter judgment in favor of Defendants and against Plaintiff.

SO ORDERED.

Enter for this 17th day of August 2015.

s/ Susan Collins_____
Susan Collins,
United States Magistrate Judge